# IN THE COURT OF APPEALS OF IOWA

No. 23-1480
Filed December 18, 2024

**DOREN WALKER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Washington County, Joel D. Yates, Judge.

An applicant appeals the district court's denial of his application for modification of the sex offender registry. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee State.

Considered by Schumacher, P.J., Chicchelly, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**CARR, Senior Judge.**

Doren Walker appeals the district court's denial of his application for modification of the sex offender registry.  Walker argues the district court abused its discretion in focusing on the nature of the offense without considering whether he is currently at risk to reoffend.  We agree that the district court exceeded the scope of its discretion.  We vacate the district court's decision and remand with instructions to grant Walker's application.

## I.  Background Facts and Proceedings

In August 2003, Walker pleaded guilty to three counts of sexual abuse in the third degree.  He was sentenced to three consecutive ten-year terms in prison.  Walker fully discharged his sentences on December 28, 2016.  Since that date he has been under a ten-year sex offender registration requirement.

Walker applied for modification of the sex offender registry in Washington County in April 2023.  In anticipation of that application, Walker sought and obtained a risk assessment from the Iowa Department of Correctional Services (DCS), which scored him as follows:

| Test | Score | Score Adjusted for Time Free |
|---|---|---|
| STATIC-99R | Level II (Below Average risk) | Level I (Very Low risk) |
| STABLE | Low risk | N/A |
| Combined Risk Level | Low risk | |

An explanation of each test will help underscore their significance.

*STATIC-99R.*  The research for this examination considered a sample of thousands of offenders.  For every five years without a new sex offense, the risk

percentage is cut in half. Therefore, if the applicant's risk was four percent upon release, it would be half that after five years of offense-free behavior.

Walker scored a "-1" on the STATIC-99R test for the assessment. That qualifies as "risk level II," which is below average risk and used to be classified as "low." With offense-free time considered, Walker crossed the threshold to risk level I in 2019. Thus, he is now "very low risk." The percentage of risk at the point of risk level I is less than two percent.

*STABLE 2007*. The second scoring method used in Doren Walker's assessment was the STABLE 2007. The STABLE test is intended to consider stable dynamic risk factors. A dynamic risk factor is essentially a clinical impression based on talking with the offender. This differs from the data used for the STATIC test, which is objective information usually taken from court or correctional records.

DCS finds that "combined scoring more effectively determines the recidivism risk level for males." *Fortune v. State*, 957 N.W.2d 696, 702 (Iowa 2021). Following the results from these two tests, DCS concluded that Walker is low risk to reoffend.

The State resisted Walker's application and included a statement from the victim in the case and a statement from her sister. A hearing on the application was held in August. At the hearing, Walker submitted the risk assessment report and several other exhibits to explain the assessment report. He also filed an affidavit addressing his life since he was released from prison. Walker also submitted letters from individuals who had worked with him since his release from prison.

Walker's victim and her sister testified for the State. They read their statements into the record, which detailed the harm Walker's actions had caused and the pain they still deal with today.

Following the hearing, the district court denied Walker's application from the bench. In its oral ruling, the district court, addressing Walker, stated:

> As [the county attorney] alluded to, a couple things I want to say is number one, by and large you should be commended for we'll say the success you have achieved since these charges were filed; for example, successfully getting through prison. It sounds like you have done a good job post prison adjusting to your life, and those are all things that you should be commended for, and I will also state for the record that the court finds that you do meet the criteria to qualify for a modification; those criteria being (a), (b), (c), and (d) set forth in the Code that we have talked about here today.
> With all of that said and despite commending you, I am going to deny your petition here today. The court, as I think both sides acknowledge, does have discretion, and I'm going to use that discretion and error on the side of [the victim] primarily and to a lesser extent [the victim's sister], but while you have made progress, they are still struggling, and their testimony here today makes it very clear that this is not something that is—that they've moved beyond, that they've been able to put behind them for good. This is something that they live with day in, day out, and they're still struggling with what happened more than twenty years ago, and for that I am going to find weigh heavily and factor that into my decision, and based on their testimony I'm also going to find that there is sufficient risk for you to reoffend, and I certainly need to factor in the community's safety.
> And for all of those reasons, while it's not necessarily an easy decision for me, I am going to deny your petition here today, and you will remain on the registry.

Immediately following the district court's oral ruling, Walker's counsel implored the district court to consider the "remarkably similar case" of *Buck v. State*, No. 21-0129, 2022 WL 951067 (Iowa Ct. App. March 30, 2022), in which we sustained a writ of certiorari and remanded for reconsideration after the district court braced its assessment of risk to reoffend on the testimony of the victims' family. The judge remarked that the case was similar to this one "but for the judge,"

and that he was going to "go with what my gut tells me here, and I'm going to go with what instinct tells me."

Walker moved to reconsider, amend, or enlarge. The district court denied that motion, ruling that "[n]o amount of case law could induce the undersigned to participate in an injustice" and that "Mr. Walker is a public safety concern to [the State's two witnesses] and hence a public safety concern generally." Walker now appeals.

## II. Standard of Review

An application for modification under Iowa Code section 692A.128 (2023) requires the applicant to meet initial threshold requirements, which are reviewed for correction of errors of law. *Fortune*, 957 N.W.2d at 700–01. "Once the initial threshold is met, the district court may grant modification. . . . [T]he term 'may' ordinarily vests the trial court with discretion." *Id.* at 703 (citations omitted). Accordingly, where the statutory requirements are not in dispute, we review a denial of modification for abuse of discretion. *Id.*

## III. Discussion

Iowa Code section 692A.128 authorizes a district court to modify an individual's sex offender registry requirements. Modifications under this section follow a two-step analysis. Under step one, the district court determines whether an applicant has met the threshold requirements of Iowa Code section 692A.128. *Fortune,* 957 N.W.2d at 705. Under section 692A.128(2)(a)–(e), those steps require that the application will not be granted "unless all of the following apply:"

> a. The date of the commencement of the requirement to register occurred at least two years prior to the filing of the application

for a tier I offender and five years prior to the filing of the application for a tier II or tier III offender.

    b. The sex offender has successfully completed all sex offender treatment programs that have been required.

    c. A risk assessment has been completed and the sex offender was classified as a low risk to reoffend. The risk assessment used to assess an offender as a low risk to reoffend shall be a validated risk assessment approved by the department of corrections.

    d. The sex offender is not incarcerated when the application is filed.

    e. The director of the judicial district department of correctional services supervising the sex offender, or the director's designee, stipulates to the modification, and a certified copy of the stipulation is attached to the application.

"If the statutory requirements are not met, that is the end of the matter and the district court must deny the modification." *Fortune,* 957 N.W.2d at 705. "If the applicant meets the threshold statutory requirements, the district court proceeds to the second step, namely, determining, in its discretion, whether the registration requirements should be modified." *Id.*

Under step two, the district court may hold a hearing and consider any evidence it considers appropriate. *Id.* The district court need not confine its decision to the step-one statutory requirements—it may also account for "other factors relevant to the modification issue." *Id.* But it "should consider only those factors that bear on whether the applicant is at low risk to reoffend and there is no substantial benefit to public safety in extending the registration requirements." *Id.* at 706. "Low risk, of course, does not mean *no risk . . . .*" *Becher v. State*, 957 N.W.2d 710, 716 (Iowa 2021).

It is undisputed that Walker has satisfied the statutory requirements. The question that remains is whether the district court correctly exercised its discretion under step two. The State argues the district court properly exercised its

discretion, as it concluded "based on their testimony I'm also going to find that there is sufficient risk for [Walker] to re-offend," and because it cited a "need to factor in the community's safety." Walker points out that the district court's conclusions that he was at risk of reoffending and presented a public danger were based on testimony relating to the acts Walker committed over twenty years ago, rather than on his behavior during or following his imprisonment.

There are limited circumstances when concern for the "public safety" can justify denial of modification. The district court's discretion when considering these factors significantly differs from criminal sentencing discretion in that the goal of punishing the applicant is not a permissible factor on which to deny modification. *Fortune*, 957 N.W.2d at 707. And our supreme court has stated that "conclusory appeals to public safety do not defeat a modification application." *Id.* at 706. Any public safety concern must be tied specifically to the applicant and record. *Id.*

Ultimately, concern for public safety flows from the applicant's risk of reoffending. And the district court's assessment of risk for reoffending cannot solely rely on the underlying nature of the offense. *See id.* at 708. "[T]he results of the risk assessment tools should not generally be overridden by nonvalidated risk assessments made by the district court." *Id.*

There are several reasons that reliance on the crime's nature is problematic. First, this consideration "comes perilously close to punishment, an impermissible goal." *Id.* Next, the nature of the crime is already accounted for in two other ways—a tier III offender cannot apply for modification until five years after commencing registration, and the nature of the crime is considered in the validated assessment tools. *Id.* "It is important to recognize it is possible for any . . . sex

offender to reoffend. Yet, the mere possibility of reoffending does not preclude waiver or subsequent modification." *Becher*, 957 N.W.2d at 715 (cleaned up).

The district court may consider criminal convictions after an applicant's release from prison, but conversely, the district court should consider a lack of criminal convictions as well. *See Fortune*, 957 N.W.2d at 709. Again, the focus "must be on the present danger or threat to public safety, not on punitive response to past crime." *Id.* The district court's decision on modification should not fixate "on past crimes and past patterns of behavior" alone. *Buck*, 2022 WL 951067, at *3.

Here, Walker provided a significant volume of evidence supporting a conclusion that he is low risk for reoffending. His STATIC-99R put him at less than two percent chance of reoffending, and the combined DCS assessment results categorize him as low risk. Walker also provided letters of reference supporting his transformation since he left prison. Those references highlight his work with the groups Inside Out, Beyond the Bars, and Family Love—which focus on reentry into the community after prison. Not only has he successfully transitioned from prison, but he has made efforts to help others make that same transition. Walker has also established consistent employment and housing status and is offense-free since his registration on the sex offender registry.

The district court based its denial of modification entirely on the testimony of the victim, and to a lesser extent, the testimony of the victim's sister. It cited the trauma Walker's actions had caused them, stating:

> it is something they still live with day in-day out, and they're still struggling with what happened more than twenty years ago, and for that I am going to find weigh heavily and factor that into my decision,

and based on their testimony I'm also going to find that there is sufficient risk for you to reoffend.

We cannot deny that Walker's criminal actions caused the victim and her family real pain. Still, those factors are impermissible because they speak to the nature of the crime and the harm Walker committed and do not speak to his risk to reoffend—despite the district court's suggestion that the testimony does speak to his risk to reoffend. *See Fortune*, 957 N.W.2d at 706 ("[C]onclusory appeals to public safety do not defeat a modification application."). As we stated above, the nature of the crime is already accounted for, and the district court should focus on present and future risk. Walker has already served his time for the harm he caused in the past. The district court also seemed to dismiss the applicable case law in its order responding to Walker's motion to reconsider.

Further, the district court recognized the changes Walker has made in his life since reentering the community. It told him he "should be commended for . . . the success you have achieved since these charges were filed" and "you have done a good job post prison adjusting to your life, and those are all things that you should be commended for." The district court's recognition that Walker's changes have persisted since his charges were filed indicate that, at some level, it recognized he is a low risk to reoffend.

In our view, Walker has more than met his burden to show he qualifies for modification. Indeed, if Walker does not qualify for modification, we are hard pressed to imagine an applicant who would qualify. The record before us shows that Walker is at low risk of reoffending. Because there is no substantial benefit to public safety in continuing his registration requirements, the district court abused

its discretion in denying Walker's motion to modify the sex offender registry. "[W]ithout consideration of the irrelevant and improper factors, there are no other factors left in the record that would support denying modification." *State v. Oltrogge*, No. 21-0776, 2022 WL 2824774, at *5 (Iowa Ct. App. July 20, 2022). Accordingly, we vacate the decision of the district court and remand with instructions to grant Walker's application.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**